UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHARLES R. LIVECCHI, SR.,

Plaintiff

DECISION AND ORDER

-vs-

14-CV-6326 CJS

THE CITY OF GENEVA, BRIAN KELLY, Individually
and in his official capacity as Code Enforcement Officer
for the City of Geneva, DAVID FOSTER, individually
and in his official capacity as Attorney for the City of
Geneva, ROBERT PETERSON, Individually and in his
official capacity as Police Officer for the City of Geneva,
and HONORABLE STEPHEN ARONSON, Individually
and in his official capacity as Acting City Court Judge,

Defendants

_____

INTRODUCTION

This is an action in which the *pro se* Plaintiff asserts several claims involving a
rental property that he owns in the City of Geneva.  Now before the Court is a motion by
the Honorable Stephen Aronson ("Aronson"), Acting Geneva City Court Judge, to
dismiss all claims against him.  The application is granted.

BACKGROUND

Unless otherwise noted, the following facts are taken from the Complaint in this
action and are presumed to be true for purposes of the instant motion.  Plaintiff owns a
five-unit apartment building in Geneva, located at 46 Hallenbeck Ave. ("the Property").
In August 2011, defendant Brian Kelly ("Kelly"), who was the Code Enforcement Officer
for the City of Geneva, ordered that the Property be vacated.  In September 2011, Kelly

1

and other city employees entered the Property without Plaintiff's permission.  On October 7, 2011, Kelly issued an order condemning the property.  Plaintiff maintains that Kelly's condemnation order was unjustified, arbitrary and capricious.  Plaintiff also apparently maintains that the issuance of such order violated his federal rights of due process, and violated the federal bankruptcy laws and the New York State law of eminent domain.

The condemnation order apparently required that Plaintiff make certain improvements at the property before it could be re-inhabited.[1]  In December 2011, Kelly re-inspected the property, and found that certain items of work were still not completed. Plaintiff disagreed with Kelly, whereupon Kelly yelled at Plaintiff and called the police.

Defendant Police Officer Robert Peters ("Peters") arrested Plaintiff and placed him, handcuffed, in a patrol car.  Kelly also indicated that he was placing Plaintiff under a citizen's arrest.  Plaintiff maintains that Peters used excessive force, which caused bruising to his back and wrists.  Plaintiff was arraigned and released, and the charge against him was eventually dismissed.

The Complaint is confusing, but it appears that sometime later, the City of Geneva commenced an action against Plaintiff in City Court, concerning the rental property, which was initiated by service of a summons, to which no complaint was attached.  Plaintiff appeared for a hearing on the matter, which was presided over by defendant Aronson, in his capacity as Acting City Court Judge.  Plaintiff denied that there were code violations at the property, and Aronson, in an apparent attempt to

---

[1]*See*, Complaint at ¶ 18.

resolve the dispute, suggested that the property be re-inspected by someone other than Kelly.  Plaintiff agreed to having the property re-examined by a different inspector, but demanded that the City also provide him with an "administrative warrant," listing the alleged code violations and the name of the new inspector.  Aronson indicated that he was not aware of any such requirement, and stated that if Plaintiff did not agree to have the property re-inspected, the case against him would go forward.  Plaintiff maintains that he declined the re-inspection since the City would not provide him with a warrant.[2]

During the ensuing hearing, Plaintiff indicated that the action should be dismissed, since he "was under Bankruptcy protection" and the Property was part of the bankruptcy estate.  However, Aronson denied that request and eventually ruled that the property had to be vacated.  Subsequently, City employees entered the property and directed the tenants to leave.  The City then took possession of the property and changed the locks.  Bankruptcy Court subsequently granted the Trustee's request to abandon the property as part of the bankruptcy estate.

The City also imposed fines on the property, which were added to Plaintiff's property tax bills.  The City began foreclosure proceedings, but told Plaintiff that it would discontinue the foreclosure if he agreed to turn over the property to the City.  However, Plaintiff refused to do so.

Aronson eventually dismissed all proceedings involving the property, and Plaintiff attempted to re-open the property for renting.  However, the City commenced new proceedings against the property.  Plaintiff argued, though, that the new proceeding

---

[2]However, months later Aronson agreed with Plaintiff and directed the City to provide Plaintiff with an administrative warrant. *See*, Complaint [#1] at ¶ 39.

was invalid, because it used the same index number as the prior action that had been dismissed.  Aronson disagreed with Plaintiff.  Nevertheless, the City obtained a new index number and is continuing to pursue legal action against the property.  Plaintiff contends, though, that the new proceeding is invalid because he was not served with papers bearing the new index number.

On June 13, 2014, Plaintiff commenced this action.  The Complaint purports to assert the following claims: 1) "Damages" caused by vandalism to the property while it sat empty; 2) "Abuse of Power" by City employees; 3) "Abuse of Process"; 4) "Criminal Trespass"; 5) "Loss of Use"; 6) "Emotional Distress"; 7) "Malfeasance in Office"; 8) "Economic Tort & "Tortuous [sic] Interference"; 9) "False Imprisonment" and 10)[3] "Retaliation."  The Complaint demands $33.5 millon in damages.  With regard to Aronson, the Complaint generally alleges that he lacked authority, allowed City officials to make false statements, allowed an improper action to proceed and acted in a manner that was unethical, irrational and biased.

On July 2, 2014, Aronson filed the subject motion [#2] to dismiss all claims against him.  Aronson maintains that he is being sued for his actions as a judge, and that he is therefore entitled to absolute judicial immunity.  On July 10, 2014, Plaintiff filed a response to the motion, in which he argues that a judge's "immunity is void" if he condones unethical behavior or participates in constitutional violations.  The gist of Plaintiff's submission is that since Aronson allegedly engaged in wrongful conduct as a

---

[3]This claim is actually designated as number eleven in the Complaint, but there is no tenth cause of action.  The Complaint that Plaintiff filed is missing page number 18, which apparently contained a tenth cause of action, but there is no such page or claim before the Court.

judge, he is not entitled to immunity.  However, Plaintiff's submission fails to cite any

legal authority for any of its arguments, except a vague and unexplained reference to

the Eleventh Amendment.[4]  Most significantly, Plaintiff fails to cite any legal authority to

refute Aronson's legal arguments regarding judicial immunity.

DISCUSSION

 Defendant has moved to dismiss this action pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  The legal principles applicable to such a motion are

clear:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain
> statement of the claim showing that the pleader is entitled to relief, in
> order to give the defendant fair notice of what the claim is and the
> grounds upon which it rests. While a complaint attacked by a Rule
> 12(b)(6) motion to dismiss does not need detailed factual allegations, a
> plaintiff's obligation to provide the grounds of his entitlement to relief
> requires more than labels and conclusions, and a formulaic recitation of
> the elements of a cause of action will not do. Factual allegations must be
> enough to raise a right to relief above the speculative level, on the
> assumption that all the allegations in the complaint are true (even if
> doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d

929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98

(2d Cir.2007 ) ("To survive dismissal, the plaintiff must provide the grounds upon which

his claim rests through factual allegations sufficient 'to raise a right to relief above the

speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).  When

applying this standard, a district court must accept the allegations contained in the

---

[4]*See*, Pl. Response [#4] at p. 1.

complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), *cert. denied*, 531 U.S. 1052, 121 S.Ct. 657 (2000).

"While a *pro se* complaint must contain sufficient factual allegations to meet the plausibility standard, this Court affords *pro se* litigants 'special solicitude' by 'interpreting [a *pro se*] complaint to raise the strongest claims that it suggests.'" *Jackson v. Pfau*, No. 12–324–pr, 523 Fed.Appx. 736, 737, 2013 WL 1338712  at *1 (2d Cir. Apr. 4, 2013) (table)  (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir.2011) (alterations and quotation marks omitted)).

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles generally applicable to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. See, *e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).
>
> ***
>
> An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by: evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865,

6

873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122, 127 (2d Cir.

2004).[5]

However, it is well settled that judges generally have absolute immunity from

being sued for actions arising out of their judicial activities. This is true even where, as

here, a litigant alleges that a judge acted unethically and improperly:

> [J]udges generally have absolute immunity from suits for money damages for their judicial actions. Such judicial immunity is conferred in order to insure that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Thus, even allegations of bad faith or malice cannot overcome judicial immunity. In addition, as amended in 1996, § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.
>
> Judges are not, however, absolutely immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. In determining whether an act by a judge is 'judicial,' thereby warranting absolute immunity, we are to take a functional approach, for such immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches. The factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.

---

[5]Following the Supreme Court's decision in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009), there is some disagreement among district courts in this Circuit as to whether all of the foregoing "*Colon* factors" still apply. *See, e.g., Dilworth v. Goldberg*, 2011 WL 3501869 at * 17 (2d Cir. Jul. 28, 2011) ("*Iqbal* has caused some courts to question whether all five of the personal involvement categories survive that decision.") (collecting cases). It is unclear whether *Iqbal* overrules or limits *Colon*, therefore, in the absence of contrary direction from the Second Circuit, the Court will continue to apply those factors. *See, Platt v, Incorporated Village of Southampton*, 391 Fed.Appx. 62, citing *Back v. Hastings on hudson Union Free Sch. Dist.*, which sets forth all five of the *Colon* bases for imposing supervisory liability.

In employing this functional analysis, the Supreme Court has generally concluded that <u>acts arising out of, or related to, individual cases before the judge are considered judicial in nature</u>.

*Bliven v. Hunt*, 579 F.3d 204, 209 -210 (2d Cir. 2009) (emphasis added; citations and internal quotation marks omitted).

In this case, it is clear from the face of the Complaint that Aronson is entitled to absolute judicial immunity.  Plaintiff's complaints against Judge Aronson arise from actions that Aronson took in his capacity as a City Court Judge, in connection with proceedings before the City Court involving Plaintiff's property.  Accordingly, Aronson is entitled to dismissal on the basis of absolute judicial immunity.

CONCLUSION

Aronson's motion to dismiss [#2] is granted, and all claims against him are dismissed with prejudice.

So Ordered.

Dated:      Rochester, New York
             August 26, 2014

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge