UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHARLES R. LIVECCHI, SR.,

                              Plaintiff

-vs-

THE CITY OF GENEVA, BRIAN KELLY, Individually
and in his official capacity as Code Enforcement Officer
for the City of Geneva, DAVID FOSTER, individually
and in his official capacity as Attorney for the City of
Geneva, ROBERT PETERSON, Individually and in his
official capacity as Police Officer for the City of Geneva,

                              Defendants

_____

DECISION AND ORDER

14-CV-6326 CJS

INTRODUCTION

        This is an action in which the *pro se* Plaintiff asserts several claims involving a

rental property that he owns in the City of Geneva, New York.  Now before the Court is

Defendants' summary judgment motion. (Docket No. [#17]).  The application is granted

in part and denied in part.

BACKGROUND

        Unless otherwise noted, the following are the facts of the action viewed in the

light most-favorable to Plaintiff.[1]  Plaintiff owns a five-unit apartment building in Geneva,

located at 46 Hallenbeck Ave. ("the Property").  In 2009, Plaintiff filed for bankruptcy.  In

August 2011, defendant Brian Kelly ("Kelly"), who was the Code Enforcement Officer

for the City of Geneva, entered the Property without a warrant or Plaintiff's permission

_____

[1]Plaintiff has not disputed the factual recitation contained in Defendant's summary judgment
motion. *See, e.g.*, Flynn Aff. [#17-1].

1

and ordered that the Property be vacated due to code violations.  In September 2011, Kelly, and other city employees, again entered the Property without a warrant or Plaintiff's permission.  On October 7, 2011, Kelly issued an order condemning the Property.  Plaintiff maintains that Kelly's condemnation order was ineffective because it was not signed by a judge, and that it was also unjustified, arbitrary and capricious. Plaintiff also apparently maintains that the issuance of such order violated his federal rights of due process, and violated the federal bankruptcy laws and the New York State law of eminent domain.  Regarding the bankruptcy laws, however, Bankruptcy Court has already determined that Defendants did not violate the automatic bankruptcy stay. *See*, Docket No. [#17-11].

The condemnation order required that Plaintiff make certain improvements at the Property before it could be re-inhabited.[2]  Plaintiff made repairs which he believed corrected the problems.  However, on December 16, 2011, Kelly re-inspected the Property, and indicated that certain items of work were still not completed to his satisfaction.  Plaintiff disagreed with Kelly, whereupon Kelly yelled at Plaintiff and called the police.

Kelly then made untrue statements to Defendant Police Officer Robert Peters ("Peters"), who, based on Kelly's statements, arrested Plaintiff and placed him, handcuffed, in a patrol car.[3]  Kelly also indicated that he was placing Plaintiff under a citizen's arrest.  Plaintiff maintains that Peters used excessive force while handcuffing

---

[2]*See*, Complaint [#1] at ¶ 18.

[3]*See*, Complaint [#1] at ¶ ¶ 21, 23.

him and placing him in the patrol car, which resulted in bruising to his back and wrists. Plaintiff was arraigned and released, and the charge against him was eventually dismissed.

In or about January 2012, the City of Geneva commenced an action against Plaintiff in City Court, concerning the Property, which action was initiated by service of a summons, to which no complaint was attached.  Plaintiff appeared for a hearing on the matter, which was presided over by the Honorable Stephen Aronson ("Aronson"), Acting City Court Judge.  Aronson was formerly a Defendant in this action, but the Court dismissed all claims against him on the grounds of absolute judicial immunity.  In any event, Plaintiff denied that there were code violations at the Property, and Aronson, in an attempt to resolve the dispute, suggested that the Property be re-inspected by someone other than Kelly.  Plaintiff agreed to have the Property re-examined by a different inspector, but demanded that the City also provide him with an "administrative warrant," listing the alleged code violations and the name of the new inspector. Aronson indicated that he was not aware of any such requirement for an administrative warrant, and stated that if Plaintiff did not agree to have the Property re-inspected, the case against him would go forward.  Plaintiff maintains that he declined the re-inspection since the City would not provide him with a warrant.[4]

During the ensuing hearing before Judge Aronson, Plaintiff indicated that the action should be dismissed, since he "was under Bankruptcy protection" and the Property was part of the bankruptcy estate.  Plaintiff also indicated that the City

---

[4]However, months later Aronson agreed with Plaintiff and directed the City to provide Plaintiff with an administrative warrant. *See*, Complaint [#1] at ¶ 39.

employees trespassed on the Property without a warrant.  Aronson, though, denied Plaintiff's application to dismiss and eventually ruled that the Property had to be vacated.

On March 22, 2012, City employees entered the Property and directed the tenants to leave.  The City then took possession of the Property and changed the locks.

On August 29, 2012, Bankruptcy Court granted the Bankruptcy Trustee's request to abandon the Property as part of the bankruptcy estate.

The City imposed "thousands of dollars" of fines on the Property for the alleged code violations, which were added to Plaintiff's property tax bills.  Plaintiff declined to pay the tax bills, and the City began foreclosure proceedings, but told Plaintiff that it would discontinue the foreclosure if he agreed to turn over the Property to the City.  However, Plaintiff refused to do so.

Aronson eventually dismissed all proceedings involving the Property, and Plaintiff attempted to re-open the Property for renting.  However, the City refused to restore water service to the Property.

The City also commenced a new court proceeding involving the Property.  Plaintiff argued, though, that the new proceeding was invalid, because it used the same index number as the prior action that had been dismissed.  Aronson disagreed with Plaintiff.  Nevertheless, the City obtained a new index number and continued to pursue legal action against the Property.  Plaintiff contends, though, that the new proceeding was invalid because he was not served with papers bearing the new index number.

On December 30, 2011, Plaintiff served an unverified letter, intended as a notice of claim, on the City of Geneva, concerning "wrong doings by city employees," for which

he intended to sue the City.  The notice of claim described the alleged "wrong doings" as follows:

1. Retaliation - since inspector was allowed to inspect the property after I filed a complaint against him; which in turn allowed him to act retaliatorily, arbitrarily and capriciously;

2. False imprisonment

3. False arrest

4. Violation of constitutional rights

5. Abuse of power

6. Elderly abuse

7. Physical abuse by police officer

8. Police brutality

9. Failure of due process

10. Inspector failed to inform me that the certificate of compliance was going to expire as they are supposed to do, which then caused the rents to be cut off.

11. Criminal trespass on to property when they posted the property

12. Abuse of tenants

13. Police officer making false statements and illegally giving legal advice when he informed  me that I must let any police officer or inspector on to the property without a warrant

14. Mental anguish

15. Causing approximately $10,000 in damages due to the city's sewer line breaking and backing up into my property.  Reimbursement of rent loss and damages, as well as any further damages caused by this matter.

16. Discrimination due to the inspector's behavior the tenants feel like they have been discriminated against and will be filing a discrimination suit.

17. Making false statements - former city attorney made a false statement when he said that there were appeal procedures in place for all matters, when in fact there are none.  The only reasons that he made this statement was for the sole purpose of winning the case which is currently awaiting to be heard in the fourth district and said appeal will be amended to include these issues accordingly

18. Violating a [bankruptcy] stay order.

Docket No. [#17-8] at pp. 43-44.

On April 18, 2013, Plaintiff commenced an action against Kelly in New York State Supreme Court, Ontario County, concerning the aforementioned matters. Plaintiff alleged that Kelly entered and inspected the Property without a warrant, and found code violations based on an improper version of the code, but that Plaintiff nevertheless corrected most of the violations.  Plaintiff indicated, though, that when Kelly re-inspected the Property, they had a verbal dispute regarding the remaining violations, during which Kelly was "verbally abusive."  According to Plaintiff's pleading, Kelly complained to the police that Plaintiff had threatened him, whereupon a police officer, whom Plaintiff did not name but who is presumably Peters, placed Plaintiff in the police car without asking any questions.  After some discussion between Kelly and the officer, Kelly told Plaintiff that he was under arrest, and the officer placed Plaintiff in

handcuffs.  Plaintiff sued Kelly for "criminal trespass," "intimidation," "filing a false report & retaliation," "failure to comply with due process & malfeasance in office," and "illegal citizen's arrest."

On November 5, 2013, Kelly moved to dismiss the state-court lawsuit on several grounds, including that the action was barred by the statute of limitations, and that he was immune from suit.  On December 2, 2013, the Honorable William W. Kocher ("Kocher"), Acting Supreme Court Justice, granted Kelly's motion and dismissed the action.  In that regard, Kocher found, first, that the action was untimely under New York General Municipal Law § 50-i, because it was commenced more than one year and ninety days after the event at issue.  Further, Kocher found that Kelly was immune from being sued for his actions as the City's Code Enforcement Officer.  Plaintiff filed a notice of appeal from Kocher's ruling, but never perfected his appeal.

Instead, Plaintiff commenced a new lawsuit.  Specifically, on June 13, 2014, Plaintiff commenced this action, proceeding *pro se*.  The Complaint indicates that it is intended to vindicate Plaintiff's "constitutional and statutory rights," and is "brought pursuant to 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution."  Further, the Complaint purports to assert the following claims: 1) "Damages" caused by vandalism to the Property while it sat empty; 2) "Abuse of Power" by City employees; 3) "Abuse of Process"; 4) "Criminal Trespass"; 5) "Loss of Use"; 6) "Emotional Distress"; 7) "Malfeasance in Office"; 8) "Economic Tort & "Tortuous [sic]

Interference"; 9) "False Imprisonment" and 10)[5] "Retaliation."  The Complaint demands

$33.5 millon in damages.  In addition to suing the individual defendants, Plaintiff

contends that the City of Geneva itself is liable to him for failing to train its employees.

On November 14, 2014, Defendants filed the subject motion [#17] for summary

judgment.[6]  Defendants maintain that all of Plaintiff's claims are "either (1) barred by the

doctrine of *Res Judicata*, (2) time barred [under General Municipal Law § 50-i], (3) not

actionable and/or (4) barred by the doctrine of Qualified Governmental Immunity."

(Docket No. [#17-1] at ¶ 2).  With regard to *res judicata*, Defendants contend that

Plaintiff already unsuccessfully litigated the same issues in this lawsuit in the Ontario

County action.

On December 15, 2014, Plaintiff filed a two-page response [#18] to Defendants'

motion.  Plaintiff begins with the patently incorrect assertion that since he has

requested a trial by jury, it would be unconstitutional for this Court to grant Defendants'

summary judgment motion.  Apart from that, Plaintiff contends, in pertinent part, the

following: 1) Kelly is not entitled to immunity, since he was acting outside the scope of

his duties as a code officer when he placed Plaintiff under citizen's arrest; 2) the City of

Geneva is nevertheless responsible for Kelly's actions taken during his working hours;

3) the claims against Kelly in this action are not barred by *res judicata*, since Plaintiff

---

[5]This claim is actually designated as number eleven in the Complaint, but there is no tenth cause of action.  The Complaint that Plaintiff filed is missing page number 18, which apparently contained a tenth cause of action, but there is no such page or claim before the Court.

[6]Defendants initially failed to file the required *Irby* notice, but subsequently served Plaintiff with the notice as part of their reply papers.  The Court finds that Plaintiff is an experienced *pro se* litigator who was not prejudiced by the timing of the service of the *Irby* notice, and who has not expressed any desire to supplement his papers.

previously sued him "strictly as an individual," while he is now suing Kelly "in his official capacity as a city inspector"; and 4) Peters used excessive force in his capacity as a police officer.

On December 29, 2014, Defendants filed a reply asserting, in pertinent part, that Plaintiff's response fails to raise a triable issue of fact.

DISCUSSION

*Rule 56*

Summary  judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993). Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles generally applicable to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show
> (a) that the defendant is a "person" acting "under the color of state law,"
> and (b) that the defendant caused the plaintiff to be deprived of a federal
> right. See, *e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d

9

492 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).

***

An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by: evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122, 127 (2d Cir. 2004).[7]

*Res Judicata*

As discussed earlier, Acting Supreme Court Justice Kocher dismissed Plaintiff's state-court lawsuit against Kelly on two grounds: 1) it was untimely under New York General Municipal Law § 50-i; and 2) Kelly was entitled to governmental immunity. Defendants contend that the instant lawsuit is therefore barred by the doctrine of *res judicata* not only as to Kelly, but as to the City of Geneva, Foster and Peters as well

---

[7]Following the Supreme Court's decision in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009), there is some disagreement among district courts in this Circuit as to whether all of the foregoing "*Colon* factors" still apply. *See, e.g., Dilworth v. Goldberg*, 2011 WL 3501869 at * 17 (2d Cir. Jul. 28, 2011) ("*Iqbal* has caused some courts to question whether all five of the personal involvement categories survive that decision.") (collecting cases).  It is unclear whether *Iqbal* overrules or limits *Colon*, therefore, in the absence of contrary direction from the Second Circuit, the Court will continue to apply those factors. *See, Platt v, Incorporated Village of Southampton*, 391 Fed.Appx. 62, citing *Back v. Hastings on Hudson Union Free Sch. Dist.*, which sets forth all five of the *Colon* bases for imposing supervisory liability.

since they are in privity with Kelly.[8]

Plaintiff opposes Defendants' motion, but only refers to the *res judicata* issue in

the following two sentences:

> In the prior case wherein Defendant Kelly was named, he was sued
> strictly as an individual for his action of placing the Plaintiff under citizen's
> arrest.  Since it was argued that Mr. Kelly was acting as a city employee
> thus he was now named in his official capacity as city inspector. [sic]

(Pl. Response [#18] at p. 2).  From this, the Court understands Livecchi to argue that

*res judicata* does not apply because he originally sued Kelly in his individual capacity,

and is now suing him in his official capacity.  Although, such argument is inconsistent

with the caption in Livecchi's Complaint [#1], in which he indicates that he is presently

suing Kelly "[i]ndividually and in his official capacity."  Plaintiff's contention that his

previous lawsuit involved only a false arrest claim is similarly inaccurate. *See*, Docket

No. [#17], Ex D (Previous lawsuit included claims for criminal trespass, intimidation,

filing a false report & intimidation, failure to comply with due process & malfeasance in

office, and illegal citizen's arrest).

In any event, the legal principles applicable to "claim preclusion" *res judicata*,

which Defendants are raising here, are clear:

> Under claim preclusion, a final judgment forecloses successive litigation of
> the very same claim, whether or not relitigation of the claim raises the
> same issues as the earlier suit.  The doctrine precludes not only litigation
> of claims raised and adjudicated in a prior litigation between the parties
> (and their privies), but also of claims that might have been raised in the
> prior litigation but were not.

                                                      ***

---

[8]*See*, Docket No. [#17-1] at ¶ 26.

11

> Preclusion of a claim under this doctrine requires a showing that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the same adverse parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.

*Marcel Fashions Group, Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 107-108 (2d Cir. 2015) (citations and internal quotation marks omitted).

Applying these principles, the Court finds that *res judicata* applies to bar Plaintiff from suing Kelly in this action.  In that regard it is clear that the prior lawsuit involved the same parties -- Plaintiff and Kelly -- and involved an adjudication on the merits in Kelly's favor.  Additionally, it is clear that Plaintiff's prior lawsuit against Kelly either raised the same issues being raised here, or could have raised them.  Accordingly, Kelly is entitled to summary judgment on the grounds of claim-preclusion *res judicata.*

However, the Court does not agree that *res judicata* bars the instant claims against the City of Geneva, Foster or Peters, since they are not in privity with Kelly.  On this point, Plaintiff maintains that his prior lawsuit was against Kelly only in his individual capacity, which finds support in the fact that his state-court complaint contains no reference to suing Kelly in his official capacity.  Moreover, privity for purposes of *res judicata* exists between municipal employees who were previously sued in their official capacities, but not between municipal employees who were sued in their individual capacities. *See, Peros v. Castano*, No. CV–01–4457(JG), 2002 WL 603042 at *3 (E.D.N.Y. Mar. 22, 2002) (collecting cases); *Lewis v. City of New York*, No. 10 CV 3266(RJD)(LB), 2011 WL 3273939 at *3, n. 6 (E.D.N.Y. Jul. 29, 2011) ("[T]he weight of authority holds that public employees sued in their individual capacities are not in privity

12

with their employers, or with each other, for *res judicata* purposes."). Consequently,
since Plaintiff's prior lawsuit was against Kelly in his individual capacity, there is no
privity between Kelly and the remaining defendants for purposes of *res judicata*. The
summary judgment motion by the City of Geneva, Foster and Peters is therefore denied
insofar as it is based upon *res judicata*.

     *City Attorney Foster*

     Defendants nevertheless maintain that Foster is entitled to summary judgment
on the merits, and the Court agrees. In this regard, apart from naming Foster in the
caption of the Complaint, Plaintiff's pleading contains four direct references to either
Foster or the "City Attorney," which indicate that Foster prosecuted the building
code/foreclosure lawsuit on behalf of the City. (Complaint ¶ ¶ 27, 36, 40, 49). Plaintiff
contends that such legal proceedings against him and/or the Property was wrongful for
the reasons discussed above. However, Defendants contend that the Complaint fails to
state a claim against Foster.[9]

     Liberally construing Plaintiff's response [#18] to Defendants' motion, he disputes
Defendants' contention that governmental immunity applies to Kelly and Peters, but
does not address Foster. Accordingly, Plaintiff does not oppose the motion as to
Foster. In any event, the Court agrees with Defendants that Foster is entitled to
absolute immunity for his actions, as City Attorney, in initiating and/or maintaining the
complained-of legal actions involving the Property. *See, Spear v. Town of West
Hartford*, 771 F.Supp. 521, 526 (D.Conn. 1991) ("[A]bsolute immunity has also been

---

    [9]*See*, Docket No. [#17-1] at ¶ 13.

afforded to municipal attorneys who initiate civil actions."), *aff'd* 954 F.2d 63 (2d Cir. 1992) (Agreeing that absolute immunity extends to "government attorneys who initiate civil suits"), *cert den.* 506 U.S. 819, 113 S.Ct. 66 (1992).  Accordingly, Foster is entitled to summary judgment.

*Statute of Limitations*

Defendants also move for summary judgment based upon the statute of limitations defense.  In considering this application, the Court, having previously dismissed Aronson from this action, and having now determined that Kelly and Foster are entitled to summary judgment, has reviewed the Complaint in order to determine what claims remain.  Having done so, the Court determines that the only remaining claims are against Peters and the City of Geneva.  More specifically, the Complaint [#1] purports to assert § 1983 claims against Peters, and a § 1983 *Monell* claim against the City of Geneva for failing to train Peters.

The Court does not read the Complaint as asserting any state-law claims, inasmuch as the pleading indicates it is asserting claims under § 1983. See, Complaint [#1] at ¶ 2.  However, to the extent that Plaintiff might be attempting to assert state-law claims, it appears, and Plaintiff has not disputed, that they are time-barred under the one-year-and-ninety-day statute of limitations imposed by General Municipal Law § 50-i. *See, e.g., Bejaoui v. City of New York* , 2015 WL 1529633 at *13-14  (E.D.N.Y. Mar. 31, 2015) ("[A] plaintiff must commence an action against a municipality within one year and ninety days of the date the cause of action accrues. N.Y. Gen. Mun. Law §

50–i(1)(c).").[10]

On the other hand, claims under § 1983 are subject to a three-year statute of limitations, and Defendants have not shown that the § 1983 claims are time-barred. Accordingly, Defendants' application for summary judgment based upon the statute of limitations is denied as to the remaining § 1983 claims against Peters and the City of Geneva.

*Qualified Immunity*

Lastly, Defendants have moved for summary judgment based upon "the doctrine of Qualified Governmental Immunity." (Docket No. [#17-1] at p. 2).  However, the only actual discussion of immunity in Defendants' papers concerns Defendant Kelly, who is being granted summary judgment on the grounds of *res judicata*. *Id*. at ¶ ¶ 51-53.  Apart from such discussion, Defendants make only a conclusory assertion that they "are, in fact, protected by qualified immunity." *Id*. at ¶ 62.  However, the Court finds that the remaining individual defendant, Peters, has not shown that he is entitled to summary judgment on the grounds of qualified immunity at this time.

CONCLUSION

Defendants' motion for summary judgment [#17] is granted in part and denied in part.  Kelly and Foster are granted summary judgment, and the Clerk is directed to terminate them as parties.  The Section 1983 claims against Peters and the City of Geneva may proceed.  Defendants' counsel is directed to notify the Hon. Jonathan W.

---

[10]This statute of limitations would apply to claims against individual municipal employee defendants if the tortious acts were performed within the scope of their employment and the City had a duty to indemnify them.  Otherwise, state-court claims against individual defendants would be subject to New York's one-year limitations period for intentional torts. *See, Tumminello v. City of New York*, 212 A.D.2d 434, 435, 622 N.Y.S.2d 714, 715 (1st Dept. 1995).

Feldman, United States Magistrate Judge, that this application has been resolved, so that a scheduling conference may be held. *See*, Docket No. [#15] (Order directing parties to notify Judge Feldman once dispositive motion is resolved so that a scheduling conference can be held); Docket No. [#20] (Order staying discovery pending resolution of Defendants' dispositive motion).

      So Ordered.

Dated:     Rochester, New York
         April 20, 2015

                     ENTER:

                     /s/ Charles J. Siragusa
                     CHARLES J. SIRAGUSA
                     United States District Judge