UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHARLES R. LIVECCHI, SR.,

                Plaintiff

-vs-

THE CITY OF GENEVA and ROBERT PETERS,
Individually and in his official capacity as Police
Officer for the City of Geneva,

                Defendants
_____

DECISION AND ORDER

14-CV-6326 CJS

## INTRODUCTION

In this action the *pro se* Plaintiff asserts claims for unlawful detention and excessive force under 42 U.S.C. § 1983 ("Section 1983") arising from an incident on December 16, 2011, in which he was arrested for allegedly threatening a Code Enforcement Officer employed by the City of Geneva. Now before the Court is Defendants' motion for summary judgment (Docket No. [#40]). The application is granted as to the City of Geneva but is otherwise denied.

## BACKGROUND

On June 13 2014, Charles R. Livecchi, Sr. ("Livecchi" or "Plaintiff") commenced this action against the City of Geneva and four individual defendants including Robert Peters ("Peters"), who was formerly employed as a police officer by the Geneva Police Department. On April 21, 2015, the Court issued a Decision and Order [#21] granting the defendants' summary judgment motion [#17] in part, leaving only claims under Section 1983 against Peters and the City of Geneva. *See*, Decision and Order [#21] at p. 14 ("[T]he Court determines that the only remaining claims are against Peters and the City

of Geneva. More specifically, the Complaint [#1] purports to assert § 1983 claims against Peters, and a § 1983 *Monell* claim against the City of Geneva for failing to train Peters.").

Subsequent to the issuance of that Decision and Order [#21], the parties conducted further pretrial discovery. Then, on May 27, 2016, Defendants filed another summary judgment motion [#33] which came before the Court for oral argument on December 15, 2016. During oral argument, the Court first reviewed Plaintiff's *pro se* Complaint in an attempt to clarify the nature of the remaining § 1983 claims being asserted against Peters and the City of Geneva. The Court noted that while Plaintiff seemed to be complaining of excessive force relating to handcuffing, the Complaint [#1] did not expressly assert such a claim. The Court nevertheless indicated that inasmuch as Plaintiff was proceeding *pro se,* it would liberally construe the Complaint as asserting two § 1983 claims against Peters and the City of Geneva: 1) false arrest/false imprisonment and 2) excessive force. The Court further noted that Defendants' summary judgment motion [#33] did not comply with the Local Rules of Civil Procedure, but that the Court would permit Defendants to submit a new motion. The Court further explained to Plaintiff that in order to oppose such motion he would need to submit evidentiary proof in admissible form.

On February 13, 2017, Defendants filed the subject summary judgment motion [#40].[1] According to Defendants, the relevant facts are as follows. At all relevant times Livecchi owned a rental property located at 46 Hallenbeck Avenue in the City of Geneva. Prior to December 16, 2011, the City of Geneva had identified code violations at the rental property. On December 16, 2011, the Geneva City Code Officer, Brian Kelly ("Kelly") and

---

[1] The Notice of Motion includes an *Irby* "Pro Se Notice" as required by Rule 56(b) of the Local Rules of Civil Procedure.

a Geneva Firefighter, James Bucklin ("Bucklin"), met with Livecchi at the property to conduct an inspection and determine whether Livecchi had corrected the code violations. Following the inspection, Kelly informed Livecchi that code violations still existed, whereupon Livecchi became angry and threatened Kelly, in Bucklin's presence. Specifically, Livecchi stepped toward Kelly and stated, "I'll take care of you, I'll take care of you right now."  In response to such threat, Bucklin called the police, which resulted in defendant Officer Peters being dispatched to the scene.  The dispatcher's notes regarding the call indicate in pertinent part:

> COMPL CALLED THE PD AND STATES CODE ENFORCEMENT AND FIRE FIGHTERS ARE OUT AT 46 HALLENBECK AVE FOR A CODE ENFORCEMENT INSPECTON AND THEY'RE HAVING A PROBLEM WITH A LANDLORD.

Docket No. [#42-1] at p. 2.  When Peters arrived, he saw Kelly and Bucklin "exchanging words" with Livecchi, and observed that Livecchi appeared to be agitated.  Kelly and Bucklin told Peters that Livecchi had threatened Kelly, though Peters did not personally witness any threats being made.  Peters handcuffed Livecchi behind his back and placed him in the back of a police cruiser, but did not tell Livecchi that he was under arrest. According to Peters, "[t]he purpose of the handcuffs was merely to detain Mr. Livecchi during [his] investigation."[2]  Kelly informed Peters that he wished to press charges against Livecchi, whereupon Peters had Kelly fill out an information charging Livecchi with Harassment in the Second Degree, in violation of New Penal Law § 240.26(1).[3]  Kelly's sworn statement in the information states, in pertinent part:

> On December 16, 2011 at about 3:10 pm hours, at 46 Hallenbeck Ave, located in the City of Geneva, County of Ontario, State of New York, the above said defendant [Livecchi] did with intent to harass, annoy or alarm another person, the

---

[2] Peters Affidavit at ¶ 10.
[3] "Harassment in the second degree is a violation." NY Penal Law § 240.26

defendant did state to me he was going to take care of me and then came towards me and stated he would take care of me now all while trying to get two unknown black males to come with him. I was alarmed by the actions of the defendant thinking he was going to attack me because I was inspecting 46 Hallenbeck Ave. working for the City of Geneva Code Enforcement.

Docket No. [#42-2] at p. 2. At Peters' direction, Kelly then went over to the police cruiser, in which Livecchi was sitting handcuffed, and told Livecchi that he was under arrest.[4] In that regard, Peters evidently intended to have Peters make a citizen's arrest of Livecchi, since Peters had not personally witnessed the alleged harassment and was therefore not authorized to make a warrantless arrest for that offense according to New York Criminal Procedure Law § 140.10(1).[5] Peters then transported Livecchi to the police station for processing. Upon arriving at the police station, Livecchi told Peters that the handcuffs were painful, and Peters re-handcuffed Livecchi with his hands in front. Once inside the police station Peters removed the handcuffs and had photographs taken of Livecchi's wrists, because Livecchi was claiming to have been injured by the handcuffs. Peters completed an arrest report which consists primarily of the following narrative:

On the above date and time this officer responded to the above location for the report of a landlord giving the city code enforcement officer and the Geneva Fire Department a hard time over an inspection performed at the above address.

When this officer arrived on scene (VI) Kelly stated that (A) Livecchi had threatened him by stating "I'll take care of you," then tried to get two unknown black males to come with him while approaching (VI) Kelly in a threatening manner by throwing his arms out and pushing his chest out while stating again "I'll take care of you right now."

[4] Defendants contend that this fact is agreed to by Plaintiff, who on February 27, 2012 testified pursuant to § 50-h of the New York General Municipal Law, that, "I had a City Inspector that came up to me when I was in the police car and said, 'I am arresting you, you're under arrest.'"

[5] See NY CPL § 140.10(1) ("Subject to the provisions of subdivision two, a police officer may arrest a person for: (a) Any offense when he or she has reasonable cause to believe that such person has committed such offense in his or her presence; and (b) A crime when he or she has reasonable cause to believe that such person has committed such crime, whether in his or her presence or otherwise."); *see also*, Peters Affidavit at ¶ 8 ("I was not present when the threat was issued."); *see also, id.* at ¶ ¶ 11-13.

This officer then asked (A) Livecchi what the problem was and (A) Livecchi noticeably upset stated he was appealing the inspection. This officer was then advising (A) Livecchi to follow the instructions that were given to file an appeal, but you can't threaten the code enforcement officer and the fire department. (A) Livecchi then acted as if he couldn't hear what this officer was saying by putting his right hand up to his right ear.

At this time this officer asked (VI) Kelly if he wanted to press charges for harassment and (VI) Kelly stated "Yes." This officer then told (A) Livecchi to place his hands behind his back he [sic] was being detained at this time. (A) Livecchi then started to walk away from this officer.

This officer then grabbed (A) Livecchi's right wrist. (A) Livecchi was resisting by trying to pull away from this officer while [sic] escorting (A) Livecchi over to the marked unit GV-9. (A) Livecchi was then placed into handcuffs behind his back. This officer had a finger gap in the handcuffs from (A) Livecchi's wrists and the handcuffs were double locked. (A) Livecchi was placed into marked unit GV-9 without further incident.

This officer was on scene for another 5 minutes or so with paper work and (A) Livecchi was moving around in the back seat, but never made any comments to this officer about any injuries or having any problems. Upon arriving at the sally port to remove (A) Livecchi from marked unit GV-9 this officer assisted in getting (A) Livecchi's left foot out. At this time (A) Livecchi had his left wrist curled in an upward position with his watch and handcuff pinching his left wrist. This officer removed the watch and the handcuff were [sic] then loose. (A) Livecchi was then given time to move his left wrist around, and the handcuffs were then place [sic] in front of (A) Livecchi. This officer then transported (A) Livecchi to the booking area when (A) Livecchi stated he thinks he needs medical treatment for his wrist. This officer advised Sgt. Valenti and Finger Lakes Ambulance was contacted. EMTs arrived and looked over (A) Livecchi's left wrist and stated there was no visible injury, but an x-ray should be taken to be safe. (A) Livecchi stated he would seek medical attention later for the x-ray. [sic]

Livecchi was processed and held for arraignment.

Docket No. [#40-8]. In the course of processing Livecchi, Peters obtained a supporting deposition from Bucklin which states, in pertinent part:

[O]n December 16, 2011 at approximately 3:19PM, as a representative of The City of Geneva Fire Department, I was accompanying Brian Kelly from the City of Geneva Code Enforcement at 46 Hallenbeck Ave, in the City of Geneva. At this time, Brian Kelly and I were conductive [sic] an inspection of the apartment building. The property owner, Charles Livecchi was at the property at this time also. After completing the inspection, Mr. Livecchi approached Mr. Kelly and myself inquiring the [sic] results of the inspection. The three of us proceeded into apartment 1 w[h]ere Mr. Kelly cited the current violations to Mr. Livecchi. Mr. Livecchi became irate stating he that he wanted to appeal the violations. Mr. Kelly informed Mr. Livecchi that he would have to contact the city to appeal the violations. At that time, Mr. Kelly and I began to walk away. Mr. Livecchi stated to Mr. Kelly, "I will take care of you." Mr. Kelly turned asked [sic] Mr. Livecchi if he was threatening him. Mr. Livecchi stated, "Yeah. I'll take care of you." That is when I called the fire dispatch to have police respond to this address.

Docket No. [#40-9] at p. 2.

Based on these facts, Defendants contend that there can be no Fourth Amendment false arrest/false imprisonment claim, since it was Kelly, the non-party Code Officer, who arrested Plaintiff, and not Peters. Defendants argue, however, that even if Peters arrested Livecchi he had probable cause to do so, based on the information provided by Kelly and Bucklin, that Livecchi had threatened Kelly. Consequently, Defendants maintain that even assuming Peters violated New York Criminal Procedure Law § 140.40 by arresting Livecchi for harassment that he did not witness, such fact does not establish a constitutional violation. Defendants further contend that Livecchi cannot maintain an excessive force claim, because Peters did not ignore any complaints by Livecchi about the handcuffs; the handcuffs were removed at the police station once Livecchi complained, and Livecchi sustained no injury from the handcuffs allegedly having been applied too tightly. In that regard, Defendants indicate that Livecchi produced no evidence of injury in response to their discovery requests, and that any attempt by Livecchi to now produce such evidence should therefore be precluded by Fed. R. Civ. P.

37. Defendants further contend that Peters would be entitled to qualified immunity as to both the unlawful detention claim and excessive force claim. As for Plaintiff's *Monell* claim against the City of Geneva based on an alleged failure to train Peters, Defendants contend that there is absolutely no evidence that Plaintiff's alleged injury was proximately caused by a municipal policy, practice or custom.

On March 8, 2017, Livecchi filed his opposition [#43] to Defendants' summary judgment motion.[6] Livecchi initially disputes Defendants' version of facts above. For example, Livecchi contends that the affidavit Peters submitted[7] is inconsistent with the supporting deposition that Kelly executed on January 11, 2012,[8] inasmuch as the former allegedly indicates that Peters handcuffed Livecchi and placed him in the police car prior to speaking with Kelly, while the latter indicates that Peters handcuffed Livecchi and placed him in the police car only after he spoke with Kelly at the scene and learned that Kelly wished to press charges. Plaintiff's characterization of Peters' affidavit on this point[9] is partially incorrect, however, since Peters' affidavit does not expressly state that he placed Livecchi in handcuffs prior to speaking with Kelly.[10] Rather, while Peters' affidavit is needlessly vague on this point, it seems to indicate that Peters spoke with the parties in an attempt to calm the situation prior to placing Livecchi in handcuffs.

Nevertheless, Livecchi himself maintains that Peters placed him in handcuffs immediately after he arrived at the scene, without first speaking to him or to Kelly to find

---

[6] Several of the documents submitted by Livecchi relate to pretrial discovery, but the Court has previously informed Livecchi that discovery is closed and that to the extent he feels that he did not receive certain discovery he should have notified the Magistrate Judge of that fact at the time.

[7] Docket No. [#42] at ¶ 10.

[8] Docket No. [#43-1] at p. 39.

[9] According to Livecchi, "it is Defendant Peters' statement that the plaintiff was placed in handcuffs prior to being placed under arrest and prior to conversation with Mr. Kelly upon arrival." Docket No. [#43] at p. 2.

[10] See, Peters Affidavit, Docket No. [#42] at ¶ ¶ 7-10.

out what had happened.  That is, Livecchi emphatically denies Peters' claim that he had discussions with Livecchi, Kelly and Bucklin before he handcuffed Livecchi and placed him in the back of the patrol car.  Livecchi further maintains that he was not exchanging words with Kelly or Bucklin when Peters arrived, was not agitated, and posed no physical threat to Peters, who is substantially taller and heavier than him. [11]  Moreover, Livecchi has submitted an affidavit from witness Willie Lee Carter, Jr. ("Carter"), indicating that Peters handcuffed Livecchi and placed him in the patrol car immediately upon arriving at the scene and without speaking to anyone.  According to Carter, Peters did not speak with Kelly or Bucklin until after Livecchi was already handcuffed and inside the police car.[12]  On these points, Carter states in pertinent part:

> I witnessed . . . the officer get out of his vehicle and proceeded [sic] to walk across the street towards us and state, 'Mr. Livecchi' as he was walking towards us and told Mr. Livecchi to put his hands behind his back and then placed handcuffs without any further words and proceeded to push Mr. Livecchi towards the vehicle while Mr. Livecchi was yelling, 'Why are you arresting me?'  Officer [sic] did not speak with Mr. Livecchi and proceeded to place Mr. Livecchi in the back of the car and closed the door.

Docket No. [#43-1] at p. 41.  Carter further denies that Livecchi ever threatened Kelly.[13]  Carter agrees, however, that after Peters finished speaking with Kelly and Bucklin, one of the two non-police "city employees" went to the patrol car and spoke to Livecchi, evidently referring to when Kelly told Livecchi that he was placing him under citizen's

---

[11] *See*, Docket No. [#43] at ¶ ¶ 14-16 ("In defendant Peters' affidavit he purports that he 'attempted to clam the situation by speaking with the parties.'  This is an absolute falsehood, since there was no altercation, argument or words being exchanged by any of the parties as per the attached witness affidavit.  At no point did Peters attempt to speak with the plaintiff other than to place him in handcuffs and [place him] in the back of the cop car.  Peters did not speak with anyone else present other than Mr. Kelly and Mr. Bucklin."); *see also, id.* at ¶ ¶ 39-42.
[12] Docket No. [#43-1] at p. 41.
[13] Docket No. [#43-1] at p. 42.

arrest.[14]

Based upon his version of facts set forth above, the Court concludes that Livecchi, either expressly or impliedly, makes the following arguments: 1) Peters had no reason to detain or handcuff him or place him in the patrol car immediately upon his arrival at the scene, since no argument or altercation was occurring at that time and Peters had not interviewed anyone at the scene to find out what had happened;[15] 2) to the extent that Peters' conduct in handcuffing Livecchi and placing him in the patrol car amounted to an investigatory (or *Terry*) stop, the detention was not based on a reasonable suspicion that criminal activity was afoot; 3) to the extent that Peters' conduct in handcuffing Livecchi and placing him in the patrol car amounted to an arrest, there was no probable cause for the arrest;[16] 4) the purported citizen's arrest by Kelly was without probable cause, and a citizen's arrest made at the request of law enforcement "must meet the same constitutional standards as an arrest by the law enforcement officers themselves"; 5) one cannot be arrested for merely committing Harassment in the Second Degree;[17] 6) Livecchi did not in fact commit Harassment in the Second Degree, since he did not threaten Kelly and since "[a] simple verbal disagreement between the two parties does not constitute a charge of harassment, as words are protected under the First Amendment

---

[14] Docket No. [#43-1] at p.41 ("I observed the officer then go to the two [city] employees on the opposite corner and have a lengthy conversation all during the time that Mr. Livecchi was in the back of the vehicle. I and the other tenant watched the officer and the one employee go to the Police car and speak with Mr. Livecchi[.]")

[15] Docket No. [#43] at part 18 ("Investigative detention requires that Peters had to have reasonable suspicion that a crime has been, is being, or about [sic] to be committed; otherwise this directly violates the Plaintiff's Constitutional right under the Fourth Amendment[.]").

[16] Docket No. [#43] at ¶ 12 ("Due to Defendant Peters' failure to question the witnesses and or Mr. Livecchi regarding the matter, Peters was unable to ascertain cause, or reason for second-degree harassment.

[17] Docket No. [#43] at p. 5, ¶ 25 ("At the time of arrest, Peters was well aware that the charge of Harassment in the Second Degree did not carry with it an arrest as it was a violation.").

of the Constitution";[18] 7) the placement of handcuffs on Levicchi amounted to excessive force without regard to injury, since there was no justification to use any amount of force at the time of the handcuffing;[19] and 8) if Peters is liable to Plaintiff, then "the City of Geneva is also liable as his actions were committed during his employ with the City."[20]

Some of Livecchi's arguments manifestly lack merit and do not warrant extended discussion, such as his contention that one cannot be arrested for committing harassment[21] and his argument that the City of Geneva has *respondeat superior* liability. However, Livecchi's arguments opposing the grant of summary judgment to Peters have merit, as discussed below.

## DISCUSSION

### Plaintiff's Pro Se Status

Plaintiff is proceeding *pro se*, and the Court has therefore reviewed his papers "with special solicitude, mindful that they must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Cicio v. Wenderlich*, 714 F. App'x 96, 97 (2d Cir. Mar. 16, 2018) (citation and internal quotation marks omitted).

### Rule 56

Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party seeking summary judgment bears the burden of

---

[18] Docket No. [#43] at p. 8, ¶ ¶ 39-40.
[19] Docket No. [#43] at p. 7, ¶ ¶ 36, 41-44.
[20] Docket No. [#43] at p. 4, ¶ 20.
[21] Plaintiff baldly asserts that no one can be arrested for committing Harassment in the Second Degree, since it is merely a violation, and suggests that at most a person who commits such harassment can be issued an appearance ticket. However, that contention is incorrect. *See, e.g.*, CPL § 140.10(1)(a) (Indicating that police officer can arrest someone for "any offense" committed in his or her presence).

establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir.1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

### Section 1983

Section 1983 "is not itself a source of a substantive rights, but merely provides a method for vindication of federal rights elsewhere conferred." *Long v. Crowley*, No. 09BCVB00456A(F), 2012 WL 1202181 (W.D.N.Y. Mar. 22, 2012) (citations and internal

quotation marks omitted). To establish individual liability under Section 1983, a plaintiff must show that the defendant acted under color of state law and caused the plaintiff to be deprived of a constitutional right. 42 U.S.C. § 1983.

To establish municipal or *Monell*[22] liability under § 1983 relating to a constitutional violation committed by a municipal employee in the course of his employment, "a plaintiff must establish that action pursuant to official municipal policy caused his injury." *Williams v. Bronx Cty. Child Support Customer Serv. Unit*, 741 F. App'x 854, 855 (2d Cir. 2018) (citation and internal quotation marks omitted).

> Municipalities, and individuals sued in their official capacity, are liable under § 1983 only if the challenged conduct was pursuant to a municipal policy or custom, or caused by a failure to train. To satisfy *Monell*'s policy or custom requirement, a plaintiff must show either that the challenged practice was so persistent or widespread as to constitute a custom or usage with the force of law, or that the practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials. To establish municipal liability based on a failure to act, [such as a failure to train,] a plaintiff must show that defendants knew to a moral certainty that the City would confront a given situation; the situation presented the City with a difficult choice or there was a history of its mishandling the situation; and the wrong choice by the City would frequently cause the deprivation of plaintiffs' rights. A general and conclusory allegation of a municipal policy or custom fails to state a facially plausible *Monell* claim.

*Valdiviezo v. Boyer*, No. 17-1093, --- Fed.Appx. --- , 2018 WL 5096345 (2d Cir. Oct. 18, 2018) (citations and internal quotation marks omitted).

<u>*Fourth Amendment Unlawful Detention*</u>

Plaintiff contends that he was improperly detained by Peters in violation of his Fourth Amendment rights. The Fourth Amendment protects persons from unreasonable *seizures*, including but not limited to arrests without probable cause. *See, Williams v. City*

---

[22] *Monell v. Dept. of Soc. Servs. of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978).

*of New York*, 683 F. App'x 57, 58 (2d Cir. 2017) (Indicating that claims for false arrest under section 1983 rest "on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause.") (citation omitted).

"[T]he first step in any Fourth Amendment claim (or, as in this case, any section 1983 claim predicated on the Fourth Amendment) is to determine whether there has been a constitutionally cognizable seizure." *Medeiros v. O'Connell*, 150 F.3d 164, 167 (2d Cir. 1998). A Fourth Amendment "seizure" occurs when police detain an individual under circumstances in which a reasonable person would believe he or she is not at liberty to leave. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* However, "mere police questioning does not constitute a seizure." *Muehler v. Mena*, 544 U.S. 93, 101 (2005) (internal quotation omitted).

If there was a seizure, the Court proceeds to the second step, which is to determine what type of seizure occurred. There are two relevant types of seizures, each of which requires a different level of justification: (i) an investigatory (or *Terry*) stop, which must be based on "a reasonable suspicion supported by articulable facts that criminal activity may be afoot"; and (ii) an arrest, which must be based on probable cause. *United States v. Glover*, 957 F.2d 1004, 1008 (2d Cir. 1992) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). "Whether a seizure is an arrest or a merely an investigatory detention, depends on the reasonableness of the level of intrusion under the totality of the circumstances." *Posr v. Doherty*, 944 F.2d [91,] 98 [(2d Cir. 1991)] (internal citations omitted). "As the level of intrusiveness rises, ... an encounter between the police and a citizen is more properly categorized as an arrest." *Id.*

"A permissible investigative stop may become an unlawful arrest if the means of detention are more intrusive than necessary." *United States v. Wiggan*, 530 F. App'x 51, 55 (2d Cir. 2013) (summary order) (internal quotation omitted). Thus:

> In determining whether an investigatory stop is sufficiently intrusive to ripen into a *de facto* arrest, the Second Circuit considers the "amount of force used by the police, the need for such force, and the extent to which an individual's freedom of movement was restrained, and in particular such

factors as the number of agents involved, whether the target of the stop was suspected of being armed, the duration of the stop, and the physical treatment of the suspect, including whether or not handcuffs were used."

*Id.* (internal citation omitted).

***

The third and final step is to determine whether the seizure was justified—in other words, whether the officers had reasonable suspicion (if the seizure was an investigatory stop) or probable cause (if the seizure was an arrest). *See Posr v. Doherty*, 944 F.2d at 98. In reviewing whether the officers had reasonable suspicion, "courts evaluate the circumstances surrounding the stop through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *United States v. Padilla*, 548 F.3d 179, 187 (2d Cir. 2008) (internal quotation omitted). "Even conduct that is as consistent with innocence as with guilt may form the basis for an investigative stop where there is some indication of possible illicit activity." *Id.* (internal quotation omitted).

In contrast, probable cause exists if an officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation omitted). "Probable cause does not require absolute certainty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). Indeed, "some exculpatory evidence does not make an arrest illegal when the totality of evidence still establishes probable cause to believe that the suspect committed the crime." *Stansbury v. Wertman*, 721 F.3d 84, 94 (2d Cir. 2013).

*McKenzie v. City of Mount Vernon, et al.*, No. 18 CV 603 (VB), 2018 WL 6831157, at *3-4 (S.D.N.Y. Dec. 28, 2018).

Significantly, for purposes of the instant motion, the "fruit of the poisonous tree doctrine" does not apply in Section 1983 Fourth Amendment actions.[23] So, for example, even if an investigative detention or arrest is initially made *without* reasonable suspicion

---

[23] *See, DiMascio v. City of Albany*, 205 F.3d 1322 (2d Cir. 2000) ("[T]he fruit of the poisonous tree doctrine is inapplicable to civil § 1983 actions. Thus, even assuming that the arresting officers lacked probable cause to stop appellant's car, there is no evidence from which a reasonable jury could conclude in this Section 1983 action that the officers lacked probable cause to arrest appellant for unlawful possession of the gun and knives.") (citation and internal quotation marks omitted).

or probable cause, respectively, the police may nevertheless develop probable cause during the encounter and properly arrest the subject, and in a subsequent Section 1983 Fourth Amendment unlawful seizure action, the police will only be liable for unlawfully seizing the plaintiff during the period between the initial unlawful detention/arrest and the subsequent arrest based on probable cause. [24]

Applying the foregoing principles to the facts viewed in the light most-favorable to Plaintiff, the Court finds that Plaintiff has raised triable issues of fact as to whether Peters violated his Fourth Amendment rights to be free from unreasonable seizures. First, there appears to be no dispute that Peters seized Livecchi by handcuffing him and placing him the back of the patrol car against his wishes. As for the nature of the detention, it was at least an in investigatory stop and arguably an arrest. Either way, there are triable issues of fact as to whether the detention was justified. In that regard, while Peters characterizes the detention as an investigatory stop that was made necessary because Livecchi was in an agitated state and "exchanging words" with Kelly and Bucklin, the Court must view the facts in the light most-favorable to Plaintiff, the non-movant. Viewed in that light, the record indicates that when Peters was dispatched to the scene, he was told only that there was "a problem with a landlord" involving a code inspection, but was not told who

---

[24] *See, e.g.*, *Nieves v. New York City Police Dep't*, No. 07 CIV. 5751 (SAS), 2010 WL 330205, at *3 (S.D.N.Y. Jan. 26, 2010) ("That the narcotics were found pursuant to an arguably unreasonable entry and search is irrelevant because the fruit of the poisonous tree doctrine is inapplicable to civil actions arising under section 1983. Therefore, Nieves' false arrest claim is viable, but only for the period between his initial arrest and the discovery of the narcotics.") (footnotes omitted); *see also*, *Savatxath v. Stoeckel*, No. 3:10-CV-1089, 2011 WL 1790159, at *3 (N.D.N.Y. May 10, 2011) ("[A]ssuming, arguendo, that the officers did not have a legally proper justification to initially stop and detain Plaintiff, such a justification arose once the crack pipe and crack cocaine were discovered in Plaintiff's pockets. *Accordingly, any claim for damages for the period of detention after the discovery of the crack pipe and crack cocaine must be dismissed.*") (emphasis added); *see also, Kennedy v. City of New York*, No. 11-CV-1451 ERK SMG, 2013 WL 3490351, at *4 (E.D.N.Y. July 10, 2013) ("A plaintiff whose initial, illegal stop led to the discovery of incriminating evidence may only recover damages for the initial stop and associated seizure[.]"), *aff'd*, 570 F. App'x 83 (2d Cir. 2014).

the landlord was or what type of problem was occurring. Further, according to Plaintiff (and Carter), Plaintiff was not doing anything improper or illegal when Peters arrived. Nevertheless, Plaintiff maintains that Peters immediately grabbed him, handcuffed him behind his back and shoved him into the back of the police car without talking to anyone. Consequently, there are issues of fact as to whether Peters had any basis to detain Livecchi when he first arrived at Hallenbeck Avenue.

On the other hand, Plaintiff does not dispute that within a few minutes after he was handcuffed and placed in the patrol car, Kelly approached him and told him that he was placing him under citizen's arrest. Defendants maintain that Kelly had probable cause to arrest Plaintiff based on the threats that Plaintiff made, or, alternatively, that even if Peters actually made the arrest, he had probable cause based on what Kelly and Bucklin told him.

If Kelly's arrest of Plaintiff was lawful, then such arrest would have terminated the alleged unlawful detention by Peters and replaced it with a lawful arrest, and Peters would have no liability for unlawful detention after that point. If, however, the purported citizen's arrest by Kelly was not lawful, then Peters would remain potentially liable for an unlawful detention for the entire period that Plaintiff was detained. That is because, contrary to what Defendants argue, Peters could not have had probable cause to arrest Plaintiff for second-degree harassment committed outside of his presence, regardless of what Kelly and Bucklin may have told him. *See, Ramos v.City of New York*, 298 Fed.App'x 84, 86 (2d Cir. Nov. 4, 2008) (Indicating, in connection with analysis of a § 1983 malicious prosecution claim, that "under New York law, the offense must occur in the officer's presence to provide probable cause to arrest for second-degree harassment," and that

since the harassment did not occur in the police officer's presence he could not have had probable cause to arrest.); *see also, Penree by Penree v. City of Utica, New York*, 694 F. App'x 30, 34 (2d Cir. 2017) (Finding, in connection with a malicious prosecution claim under Section 1983, that due to CPL § 140.10(1) police officers could not have had probable cause to arrest an individual for "second-degree harassment" under New York law committed outside of their presence); *but see, Regels v. Giardono*, 113 F. Supp. 3d 574, 598 (N.D.N.Y. 2015) ("There is no requirement under the *Fourth Amendment* that a police officer personally witness the conduct upon which he or she relies to establish the existence of probable cause.") (emphasis in original; citing *Williams v. Schultz*, 06–CV–1104, 2008 WL 4635383, at *7 (N.D.N.Y. Oct. 16, 2008)).

Plaintiff contends that the purported citizen's arrest by Kelly was not lawful, since it occurred at the suggestion and/or direction of Peters.  On this point, Plaintiff asserts that if "a person acts on the request of law enforcement, any [citizen's] arrest they carry out must . . . meet  the same constitutional standards as an arrest by the law enforcement officers themselves."[25]  Alternatively, Plaintiff contends that the citizen's arrest by Kelly was unlawful as lacking probable cause, since Kelly was aware that no harassment had occurred. In other words, Plaintiff contends that Kelly was lying about the alleged harassment, and therefore Kelly could not have had probable cause to make a citizen's arrest for second-degree harassment.  With regard to the first of these arguments, Plaintiff has not cited any authority to support it, nor is the Court aware of any such authority.  The Court is, however, aware that New York law permits citizens to make arrests for "any offense" that has been committed in their presence. *See*, NY CPL § 140.30(1) ("[A]ny

[25] Docket No. [#43] at p. 5, ¶ 23.

person may arrest another person . . . for any offense when the latter has in fact committed such offense in his presence."). The Court agrees, though, that the citizen's arrest by Kelly would have been unlawful if Kelly knew that Plaintiff had not threatened him. Since there are material issues of fact on that point, Peters' summary judgment motion as to the Fourth Amendment unlawful detention claim must be denied as to the entire period that Plaintiff was detained.

<u>Fourth Amendment Excessive Force</u>

Plaintiff also contends that Peters used excessive force when he applied handcuffs. The legal principles applicable to Fourth Amendment excessive force claims may be summarized as follows:

> "[C]laims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97, 109 S.Ct. 1865. Factors relevant to the determination of whether the government intruded too far on a suspect's Fourth Amendment rights include the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest. *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (citing *Graham v. Connor*, 490 U.S. at 396, 109 S.Ct. 1865). "Defendants are liable as long as the force used exceeded the force needed for the factual circumstances and the fact that Plaintiff may not have sustained serious long lasting harm is not dispositive." *Graham v. City of New York*, 928 F.Supp.2d 610, 618 (E.D.N.Y. 2013); *see also Lemmo v. McKoy*, No. 08-CV-4264 (RJD), 2011 WL 843974, at *5-6 (E.D.N.Y. Mar. 8, 2011) (collecting cases in which courts have both permitted and dismissed excessive force claims predicated on *de minimis* injury). While "not every push or shove constitutes excessive force," *Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir. 1995) (citing *Graham v. Connor*, 490 U.S. at 396, 109 S.Ct. 1865), a show of force by an officer that is grossly disproportionate to the risk of harm, as determined by the *Graham v. Connor*

factors, may support a claim for excessive force.

> "That multi-factor test is not meant to be applied rigidly, however, and the inquiry into whether force is reasonable requires an objective examination of the totality of the circumstances." *Gersbacher v. City of New York*, No. 14-CV-7600 (GHW), 2017 WL 4402538, at *9 (S.D.N.Y. Oct. 2, 2017) (internal quotation marks omitted). The "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 100. "[G]ranting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) (Sotomayor, J.).

*Othman v. City of New York*, No. 13CV4771NGGSJB, 2018 WL 1701930, at *5 (E.D.N.Y. Mar. 31, 2018).

In the instant action, Defendants do not explain how, under Plaintiff's version of facts, it would have been reasonable for Peters to handcuff Plaintiff. Instead, Defendants merely argue that Plaintiff "sustained no injury as a result of being handcuffed," which is "fatal to [his] excessive force claim."[26] On this point, Defendants point to a line of cases in this Circuit which generally hold that with regard to handcuff-excessive-force cases, "there is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort."[27] *See, e.g., Horace v. Gibbs*, No. 14-CV-655S, 2018 WL 4901040, at *3 (W.D.N.Y. Oct. 9, 2018) ("While handcuffs must be reasonably tight to be effective, handcuffs that are overly tight may constitute an excessive use of force on the part of the officer using them. In evaluating the reasonableness of handcuffing, a court is to consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the plaintiff's pleas that the

---

[26] Def. Memo of Law [#40-4] at p. 2.
[27] Def. Memo of Law [#40-4] at p. 2.

handcuffs were too tight; and 3) the degree of injury to the wrists. There is a consensus among District Courts in this Circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort and bruising.") (quoting *Hollins v. City of New York*, No. 10 CIV. 1650 LGS, 2014 WL 836950, at *9 (S.D.N.Y. Mar. 3, 2014)).

However, the Court believes that analysis applies only where it was reasonable for a police officer to apply handcuffs in the first place.[28]  In a situation where it was not reasonable for the officer to apply handcuffs in the first instance, the fact that the plaintiff was not injured (or did not complain of discomfort) does not excuse the excessive use of force.  Here, viewing the facts in the light most-favorable to Plaintiff, a jury could find that it was not reasonable for Peters to use any amount of force against Plaintiff.  Since there are triable issues of fact on that point, the lack of any serious injury to Plaintiff's wrists does not entitle Peters to summary judgment.  Peters' request for summary judgment on that basis is therefore denied.

*Qualified Immunity*

Peters alternatively argues that he is entitled to qualified immunity on the unlawful detention and excessive force claims.  "Summary judgment on qualified immunity is appropriate when 'a jury, viewing all facts in the light most favorable to the plaintiff, could

---

[28] *See, e.g., Rodriguez v. City of Berwyn*, No. 16 C 5106, 2018 WL 5994984, at *12 (N.D. Ill. Nov. 15, 2018) ("As to the handcuffing, nothing in the record suggests that Keske used any more force than necessary when placing handcuffs on Camacho, that the handcuffs were too tight, *or that it was unreasonable to handcuff him in the first place.* It follows that Keske deserves summary judgment on the handcuffing aspect of Camacho's excessive force claim.") (emphasis added, citation omitted); *see also, Sherman v. Platosh*, No. 3:15-CV-352 (MPS), 2017 WL 969263, at *3 (D. Conn. Mar. 13, 2017) ("Mr. Sherman does not argue that the decision to handcuff him was itself unreasonable.").

conclude that officers of reasonable competence could disagree on the legality of the defendant's actions.'" *Charland v. Nitti*, No. 1:11-CV-1191 MAD/RFT, 2014 WL 1312095, at *7 (N.D.N.Y. Mar. 31, 2014) (quoting *Cerrone v. Brown*, 246 F.3d 194, 202 (2d Cir.2001)).

Peters' argument for qualified immunity on the excessive force claim mirrors his argument for summary judgment on the merits, namely, that "there is no evidence of any injury."[29] However, the Court has already explained that such fact is not dispositive of the excessive force claim and that there are triable issues of fact as to whether it was reasonable for Peters to use force at all. Accordingly, Peters has not shown that he is entitled to qualified immunity on the excessive force claim. *See, Curry v. City of Syracuse*, 316 F.3d 324, 334 (2d Cir. 2003) (Indicating that the "right to be free from the use of excessive force" has been "clearly established" at all relevant times, and that "[w]here the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity.") (quoting *Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002)).

Peters also claims to be entitled to qualified immunity on the unlawful detention claim, however he does not explain how that would be true if the Court views the facts in the light most-favorable to Plaintiff, as it must do. That is, Peters does not assert that viewing the evidence in the light most-favorable to Mr. Livecchi, police officers of reasonable competence could still disagree as to whether it was lawful to detain or arrest

---

[29] *See*, Def. Memo of Law [#40-4] at p. 3 ("The use of force in the case at bar amounts to an allegation that handcuffs were applied to tight. Even if this were true, there is no evidence of any injury and Officer Peters would be entitled to qualified immunity and dismissal of the excessive force claim.").

him.  Instead, Peters' argument seems to be premised on the assumption that he had probable cause to arrest Plaintiff for second-degree harassment,[30] a contention which the Court has already found could not be possible under the facts alleged by Plaintiff.  *See, again*, *Ramos v.City of New York*, 298 Fed.App'x 84, 86 (2d Cir. Nov. 4, 2008) (Indicating that whether probable cause exists as a defense in a § 1983 action depends on state law, and that under New York law a police officer cannot have probable cause to arrest someone for second-degree harassment committed outside of his presence.). Consequently, Peters is not entitled to summary judgment as to the unlawful detention claim on the basis of qualified immunity.

### Monell Failure to Train

Lastly, the City of Geneva maintains that it is entitled to summary judgment on Plaintiff's *Monell* claim, which is based on the City's alleged failure to train Peters.  The Second Circuit recently reiterated the standard for establishing a *Monell* failure-train-claim, as follows:

> In limited circumstances, a local government's decision not to train or supervise its employees with respect to their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of liability under § 1983.  But a § 1983 claim against a municipality is at its weakest where it turns on an alleged failure to train or supervise.  This is in part because the alleged failure must amount to deliberate indifference to the rights of citizens.

> To prove deliberate indifference, a plaintiff must prove that the municipality failed to take corrective measures despite having actual or constructive notice that a deficiency in its training or supervising program was causing city employees to violate citizens' constitutional rights.  This generally requires a plaintiff to prove that the constitutional violation underlying his claim was preceded by a pattern of similar constitutional violations.

---

[30] *See*, Def. Memo of Law [#40-4] at pp. 5-9.

*Greene v. City of New York*, 742 F. App'x 532, 536 (2d Cir. 2018) (citations and internal quotation marks omitted).

In this action, Plaintiff has not come forward with any evidence of a municipal policy, practice or custom amounting to a failure to train police officers. Rather, Plaintiff's response to Defendants' summary judgment on this point merely asserts, mistakenly, that the City would be liable for any constitutional violation committed by Peters in the scope of his employment.[31] *See, Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (Reiterating that "municipalities are responsible only for their own illegal acts, and cannot be held vicariously liable under § 1983 for their employees' actions.") (citations and internal quotation marks omitted). Accordingly, the City of Geneva is entitled to summary judgment.

CONCLUSION

Defendants' motion for summary judgment [#40] is granted only as to the municipal liability claim against the City of Geneva. Otherwise, the application is denied. The Clerk is directed to terminate the City of Geneva as a party to this action. The case will proceed to trial on the claims against Peters.

SO ORDERED.

Dated: Rochester, New York
January 24, 2019

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[31] *See*, Docket No. [#43] at p. 4, ¶ 20 ("Peters is fully liable for his actions against Plaintiff both civilly and criminally but the City of Geneva is also liable as his actions were committed during his employ with the City.").